**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ADDISON DEMOURA, JESSICA DEMOURA, AND JOHN DOE, <br><br> Plaintiffs, <br><br> v. <br><br> ANDREW J. FORD, et al., <br><br> Defendants. | 1:09-cv-01344-OWW-GSA <br><br> MEMORANDUM DECISION REGARDING MOTION TO DISMISS (Doc. 46) |

**I. INTRODUCTION.**

Plaintiffs Addison Demoura, Jessica Demoura, and John Doe, a minor, ("Plaintiffs") proceed with an action pursuant to 42 U.S.C. § 1983 against Defendants Andrew Ford, the County of Tuolomne, and others. On July 2, 2010, Plaintiff's original complaint was dismissed, with leave to amend. (Doc. 33).

Plaintiffs filed a first amended complaint ("FAC") on September 1, 2010. (Doc. 34). On September 2, 2010, Defendants Ford and the County of Tuolomne ("Defendants") filed a motion to dismiss the FAC. (Doc. 46). Plaintiffs filed opposition to the motion to dismiss on October 25, 2010. (Doc. 52). Defendants filed a reply on November 4, 2010. (Doc. 59).

The court heard Defendants' motion on November 15, 2010. (Doc. 62). At the close of the hearing, the court granted

**1**

counsel's request to submit supplemental briefing on whether the exhaustion requirement of the California Tort Claims Act applies to claims brought against an individual. (Id.). Defendants filed a supplemental brief on November 17, 2010. (Doc. 61). Plaintiffs filed a response to Defendants supplemental brief on November 22, 2010. (Doc. 63).

## II. **FACTUAL BACKGROUND**.

On, July 25, 2007, Defendant Ford presented a Statement of Probable Cause ("Statement") in support of a search warrant to a magistrate for the search of Plaintiffs' residence and of Addison Demoura's place of business, which operated under the business name Oakdale Natural Choice Collective ("ONCC"). (FAC at 5). The FAC alleges that at all times relevant, ONCC was an association of medical marijuana patients commonly known as a medical marijuana collective that was established under the provisions of the California Medical Marijuana Program Act, and that Plaintiffs and ONCC were operating legally under relevant California law. (FAC at 10). The FAC further alleges that all Defendants possessed knowledge ONCC was operating lawfully within the provisions of the California Medical Marijuana Program Act. (FAC at 12).

Ford's Statement detailed facts learned through surveillance of Plaintiffs residence and of ONCC. Ford's Statement provided, in pertinent part[1]:

---

[1] The facts listed below are those that are material to the issue of whether Ford's statement contained sufficient information to support a finding of probable cause regarding the unlawful sale of marijuana at ONCC. Plaintiffs submitted a copy of the Statement in connection with a request for judicial notice. (Doc. 53, Ex. 7). Although Ford's Statement was not appended to the FAC, it is incorporated by reference therein, and the court may consider the Statement without converting the motion to dismiss into a motion for summary judgment. *See, e.g.*, *United States v. Ritchie*, 342 F.3d 903, 910 (9th Cir. 2003).

**2**

> I and other agents...are currently investigating the illege [sic] possession, possession for sales /and or sales of marijuana from a business identified as the "Oakdale Natural Choice Collective" (ONCC)...Assisting agents in this investigation is a confidential reliable informant, hereinafter referred to as CRI...
>
> On 06/02/07 at approx. 1400 hours, Stanislaus Drug Enforcement Agency Sherriff's Segeant William Pooley Walked by ONCC. Pooley observed three male subjects standing in front of the business. All were wearing hospital scrubs, appeared to be employees, and were letting customers in and out of the business. Pooley could smell a strong odor of marijuana coming from inside the business.
>
> On 06/04/07 Agent Gary Guffey and I were officially assigned the case to investigate. From approx. 1400-1500 hours we conducted surveillance at ONCC. We observed sic customers go in to the business empty handed, and then leave carrying small white paper bags. During the survelliance Agent Guffey walked by the front of ONCC. Guffey could smell a strong odor of marijuana coming from inside.
>
> On 06/04/07 I obtained a copy of the City of Oakdale's Business License for the [ONCC]. The license listed the owner as Addison Demoura, AKA: "Andrew". The license listed Demoura's residence...Demoura listed the ONCC business as "Retail Sales" and the products he sold as being soaps, lotions, and "natural therapeutic products."
>
> On 06/06/07 Agents conducted surveillance at ONCC between 1700-1900 hours. During this time frame a total of twelve customers were seen going in and out of ONCC. All went in empty handed, and came out carrying small white paper bags. During the surveillance agents again saw male subjects work as door/security men...
>
> On 07/10/07 Agents met with a CRI at a prearranged location for the purpose of conducting a controlled buy of marijuana from ONCC...The CRI entered ONCC and contacted a male subject...The CRI observed some props and displays of soaps and/or lotions in the front lobby area of the business. After completing paperwork the CRI was led into a second room where a third employee...was working behind a counter. The CRI was presented marijuana displayed in jars and located on top of the counter. The marijuana was individually named and color-coded. The CRI estimated the marijuana...to be approx. two pounds in total weight. The CRI purchased marijuana with the provided funds from the employee working behind the counter, and then immediately exited the business...
>
> On 07/16/07 Agents conducted surveillance at ONCC owner

**3**

> Addison Demoura's residnece...at approx. 1000 hours Demoura left his residence carrying a backpack and drove directly to ONCC.  Within an hour, several customers were seen going into the business empty handed, and the leaving carrying white paper bags.
>
> On 07/18/06, Agent Jaston Tosta contacted Stanislaus County Counsel W. Dean Wright and requested insight regarding Stanislaus County's policy and procedure regarding cannabis clubs and marijuana dispensaries. Attorney Wright advised Agent Tosta that Stanislaus county does not recognize or permit businesses engaged in the sale of "medical marijuana" within the County.
>
> On 07/18/07 I contacted Oakdale City Manager Steven Hallam via telephone and requested insight regarding The City of Oakdale's policy and procedure regarding cannabis clubs and marijuana dispensaries. City Manager Hallam advised me that the City of Oakdale does not recognize or permit businesses engaged in the sale of "medical marijuana" within the County.  Based on my conversation with City Manager Hallam, it is clear to me the business [ONCC] is operating illegally within the City of Oakdale.

Based on Ford's statement, a magistrate judge issued a search warrant for ONCC and for Addison Demoura's residence.

Defendant Ford and others executed a search warrant at Plaintiffs' residence and at ONCC on July 31, 2007. (FAC at 6). In addition to alleging that the search was unlawful, the FAC alleges that the officers executing the search warrant employed excessive force during the search.

### III. <u>LEGAL STANDARD</u>.

Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1990). To sufficiently state a claim to relief and survive a 12(b)(6) motion, the pleading "does not need detailed factual allegations" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl.*

**4**

*Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Id*. Rather, there must be "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. In other words, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal quotation marks omitted).

The Ninth Circuit has summarized the governing standard, in light of *Twombly* and *Iqbal*, as follows: "In sum, for a complaint to survive a motion to dismiss, the nonconclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir.2009) (internal quotation marks omitted). Apart from factual insufficiency, a complaint is also subject to dismissal under Rule 12(b)(6) where it lacks a cognizable legal theory, *Balistreri*, 901 F.2d at 699, or where the allegations on their face "show that relief is barred" for some legal reason, *Jones v. Bock*, 549 U.S. 199, 215, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007).

In deciding whether to grant a motion to dismiss, the court must accept as true all "well-pleaded factual allegations" in the pleading under attack. *Iqbal*, 129 S.Ct. at 1950. A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001). "When ruling on a Rule 12(b)(6) motion to dismiss,

if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider certain materials-documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice-without converting the motion to dismiss into a motion for summary judgment." *Id*. at 908.

## IV. DISCUSSION.

### A. Tuolumne County

#### 1. Federal Claims

The complaint contains only two allegations pertaining to the County of Tuolumne: (1) that Defendant Ford was employed by Tuolumne County Sheriff's Department at the time of the search, and (2) that "Defendants acted under color of state law and under the official policy, custom and practice of the Tuolumne County Sheriff's Department." Neither of these allegations are sufficient to state a claim against Tuolumne County under section 1983. There is no *respondeat superior* liability under section 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

The complaint fails to alleges facts sufficient to give rise to a reasonable inference that the Tuolumne County Sheriff's Department employed an official policy, custom, or practice of countenancing materially misleading warrant applications or the use of excessive force. *See id*. Nor does the complaint allege facts sufficient to give rise to a reasonable inference that Tuolumne County employs a policy, custom, or practice of causing unlawful

searches in violation of California's medical marijuana laws. In short, the FAC is devoid of any colorable allegations of wrongdoing by Tuolmne County; it states no more than a conclusion of law. Plaintiffs' federal claim against Tuolumne County is DISMISSED, without prejudice.

### 2. State Law Claims

At oral argument, Plaintiffs counsel conceded that Plaintiffs did not exhaust any claims against the County of Tuolumne County and that Plaintiffs unexhausted state law claims are barred. Plaintiffs' unexhausted state law claims against Tuolumne County are DISMISSED, with prejudice.

**B.  Defendant Ford**

Defendants' motion to dismiss contends that Defendant Ford did not violate Plaintiffs' constitutional rights. Alternatively, Defendants argue Ford is entitled to qualified immunity. Defendants contend that state law claims alleged against Ford are unexhausted.

### 1. Constitutional Violation

To prevail on their section 1983 claim that Defendant Ford violated Plaintiffs' Fourth Amendment rights by submitting a misleading warrant application, Plaintiffs "must show that the defendant deliberately or recklessly made false statements or omissions that were material to the finding of probable cause." *E.g. Ewing v. City of Stockton*, 588 F.3d 1218, 1223 (9th Cir. 2009). In order to establish the materiality of Ford's alleged omissions, Plaintiff must demonstrate that the search warrant would not have issued had Ford's Statement contained the omitted information. *Lombardi v. City of El Cajon*, 117 F.3d 1117, 1126

7

(9th Cir. 1997). The FAC alleges facts sufficient to support an inference that Ford intentionally omitted information from his Statement. Whether Defendant Ford's alleged omissions were material depends on the extent to which the omissions would have implicated the magistrate's assessment of whether ONCC was engaged in illegal marijuana sales.

California's Medical Marijuana Program Act ("MMPA") exempts certain classes of persons from "criminal sanctions for possession for sale, transportation or furnishing marijuana, maintaining a location for unlawfully selling, giving away, or using controlled substances, managing a location for the storage, distribution of any controlled substance for sale, and the laws declaring the use of property for these purposes a nuisance." *Urziceanu*, 132 Cal. App. 4th 747, 785 (Cal. Ct. App. 2005) (discussing Cal. Health & Safety Code § 11362.775). The MMPA provides:

> Qualified patients, persons with valid identification cards, and the designated primary caregivers of qualified patients and persons with identification cards, who associate within the State of California in order collectively or cooperatively to cultivate marijuana for medical purposes, shall not solely on the basis of that fact be subject to state criminal sanctions

Cal. Health & Saf. Code 11362.775 (emphasis added). According to the "Guidelines for the Security and Non-Diversion of Marijuana Grown for Medical Use" issued by California's Attorney General on August 25, 2008:

> a properly organized and operated collective or cooperative that dispenses medical marijuana through a storefront may be lawful under California law, but … dispensaries that do not substantially comply with the guidelines [covering collectives and cooperatives] are likely operating outside the protections of [the CUA] and the MMP[A], and … the individuals operating such entities may be subject to arrest and criminal prosecution under

**8**

>California law. For example, dispensaries that merely require patients to complete a form summarily designating the business owner as their primary caregiver—and then offering marijuana in exchange for cash 'donations'—are likely unlawful.

*People v. Hochanadel*, 176 Cal. App. 4th 997, 1009 (Cal. Ct. App. 2009) (citing A.G. Guidlines).

The FAC alleges that Ford intentionally omitted, *inter alia*, the following information from his Statement: (1) when the confidential informant applied for membership to the ONCC, the informant was required to present valid identification and a valid physician's recommendation, (2) the informant was required to agree to a formal association with all other qualified members of the ONCC to collectively cultivate marijuana for medical purposes under section 11362.775; and (3) the marijuana the informant received was labeled "for medical use only."  (FAC at 12).  In light of the scant information presented in Ford's Statement, the information omitted by Ford was material.

Ford's Statement recounts observations concerning marijuana sales at ONCC.  However, placed in context by the various steps ONCC was taking in an attempt to comply with the MMPA, the facts alleged in Ford's Statement do not support a finding of probable cause to believe that ONCC was selling marijuana in violation of California law.  By failing to present facts necessary to place ONCC's conduct in context under the MMPA, Ford deprived the magistrate of the information necessary to make a probable cause determination.  Allegations that ONCC was selling marijuana to persons with valid physician's recommendations who had formally agreed to an association with ONCC for the collective cultivation

**9**

of marijuana for medical use under the MMPA, standing alone, would have been insufficient to support a finding of probable cause. *Compare Hochanadel*, 176 Cal. App. 4th at 1019 (warrant supported by probable cause where officer's statement indicated that purchasers were not in legitimate cooperative relationship with the dispensary, that marijuana was being purchased by the dispensary from at outside supplier, that there was a large volume of cash-only transactions, and that the price of the marijuana suggested a for profit enterprise). The California Court of Appeal's decision in *Hochandel* is instructive regarding the type of information necessary to establish probable cause for violation of the MMPA:

> [O]ur analysis is confined to the facts as described in the search warrant affidavit. Those facts and application of relevant law, including the A.G. Guidelines, provide a reasonable suspicion to believe defendants were not operating within the CUA and MMPA.
>
> First, it appears that purchasers were merely required to "complete a form summarily designating the business owner as their primary caregiver … ." (A.G. Guidelines, supra, at p. 11.) There was no evidence purchasers had any other relationship with CannaHelp or that they were actual members of a cooperative or collective. These facts are a strong indication of unlawful activity. (Ibid.) Moreover, the evidence showed at least some of the marijuana CannaHelp offered for sale was purchased from an outside source, Silva, as opposed to from one or more of its own members. (Id. at p. 10.) Further, although it was determined after the fact that CannaHelp was operating at a loss, the large number of transactions, the price of the marijuana, and the cash-only nature of the business provided reasonable grounds for Detective Garcia to believe CannaHelp was not operating as a nonprofit enterprise, also a requirement for operation of cooperatives and collectives. (Id. at p. 9; § 11362.765, subd. (a).) Thus, even if facts discovered after the warrant was issued showed a lack of probable cause, Detective Garcia and the executing officers had reasonable grounds to believe they had probable cause at the time the search warrant issued, and the "good faith" exception to the exclusionary rule applies. (United States v. Leon, supra, 468 U.S. at pp. 922–923.)

176 Cal. App. 4 th at 1018. Ford's Statement was devoid of the types of facts identified in *Hochanadel* that supported a finding of probable cause.

Even with the benefit of the A.G.'s guidelines, it is difficult to determine whether ONCC was operating illegally based on the facts contained in the instant record. *See id*. (discussing A.G. Guidelines, which provide that entities that do not substantially comply with guidelines *may* be subject to prosecution) (emphasis added)). *A fortiori*, applying California law as it existed in 2007, it would not have been clear that selling marijuana to persons who had presented a valid physician's recommendation and agreed to a formal association with ONCC for the purpose of cultivating medical marijuana was illegal. *See Urziceanu*, 132 Cal. App. 4th at 785 (noting that the MMPA exempts qualified persons who associate in order to collectively or cooperatively cultivate marijuana from prosecution for the sale of marijuana; such qualification depends on intent and performance). Ford's failure to even mention facts implicating ONCC's compliance with the MMPA rendered his Statement materially misleading.

Defendants contend that ONCC was not in compliance with the MMPA. Defendants argument is misguided. First, whether ONCC was actually in compliance has no bearing on whether Ford's Statement was sufficient to establish probable cause absent the material omissions. *Hochanadel*, 176 Cal. App. 4th at 1018 (analysis of probable cause challenge confined to facts stated in supporting affidavit). Second, whether ONCC was in substantial compliance with the MMPA is a factual question that is inappropriate for resolution on a motion to dismiss. *See Qualified Patients Assn. v.*

**11**

*City of Anaheim*, 187 Cal. App. 4th 734, 751 (Cal. Ct. App. 2010).

Defendants also contend that, because marijuana is illegal under federal law, "this court cannot sanction the plaintiffs attempt to invoke federal civil rights law to secure the right to commit acts that amount to crimes under federal law." (Motion to Dismiss at 10). Defendants misapprehend the basic concepts underlying the Fourth Amendment, which tests the lawfulness of a search and seizure under both state and federal law. *See* U.S. Const., Amend. IV. Although federal law does not recognize the California scheme for medical marijuana coops, the search and seizure were conducted under state law, not federal criminal law.

The FAC alleges facts sufficient to support a reasonable inference that Defendant Ford knew ONCC was in substantial compliance with the MMPA, and that Ford intentionally omitted material information from his Statement in order to mislead the magistrate. Had the magistrate been apprised of the information Ford allegedly omitted from his Statement, a finding of probable cause could not have been sustained on then known facts. The FAC is sufficient to allege a claim under section 1983 for violation of Plaintiffs' Fourth Amendment rights.

**2. Qualified Immunity**

It is objectively unreasonable for a law enforcement officer deliberately or recklessly to make material omissions in a search warrant application. *E.g. Lombardi v. City of El Cajon*, 117 F.3d 1117 (9th Cir. 1997). Thus, whether Ford is entitled to qualified immunity depends on the factual inquiry of whether a reasonable officer in Ford's position would have understood the information omitted was plainly material to the probable cause determination.

*See, e.g., id.* at 1126.[2]

A reasonable officer in California in 2007 would not have believed that omitting information that was plainly relevant to a target's compliance with the MMPA was appropriate in a search warrant application regarding the alleged unlawful sale of marijuana. In 2005, the California Court of Appeal had clearly decided that the MMPA provided exemptions from criminal prosecution and municipal nuisance ordinances for the sale of marijuana under statutorily prescribed circumstances. *See Urziceanu*, 132 Cal. App. 4th at 785. Accordingly, Ford is not entitled to qualified immunity at this time. If, however, evidence reveals that Ford was not aware of the facts allegedly omitted from his Statement, the analysis may change.

### 3. Conspiracy

Plaintiffs' opposition to the motion to dismiss does not address Defendants' arguments regarding the FAC's deficiencies related to the conspiracy cause of action. Further, the FAC does not clearly allege the facts showing who, when, where, and why to support an inference that Ford conspired with another individual to present a misleading search warrant affidavit. Plaintiffs' conspiracy claim is DISMISSED, without prejudice.

### 4. Exhaustion of State Tort Claims

Defendants contend that the state law claims alleged against Ford may not proceed because Plaintiffs failed to exhaust their claims pursuant to the requirements of California law. Defendant's

---

[2] Defendants advance an incorrect and speculative standard: "in this case, there is no binding or persuasive authority for the proposition that a person selling medicinal marijuana in California is entitled to conduct that business without fear of search warrants issuing." (Motion to Dismiss at 14).

**13**

cite California Government Code § 950.2, which provides:

> "Except as provided in Section 950.41 , a cause of action against a public employee or former public employee for injury resulting from an act or omission in the scope of his employment as a public employee is barred if an action against the employing public entity for such injury is barred under Part 3 (commencing with Section 900) of this division or under Chapter 2 (commencing with Section 945) of Part 4 of this division. This section is applicable even though the public entity is immune from liability for the injury.

Cal. Gov. Code § 950.2.

Plaintiffs respond that because they exhausted their state law claims against the County of Stanislaus, and because Ford was acting "under" Stanislaus County at all times relevant, Plaintiffs have satisfied the exhaustion requirement. (Opposition at 11). Plaintiffs contend that, at a minimum, exhaustion of their claims against the County of Stanislaus constituted "substantial compliance" sufficient to permit Plaintiffs to proceed with their state law claims against Ford. The state law government claims require identification of each party against whom a claim is asserted.

The complaint does not allege that Ford was acting "under" the authority of Stanislaus County, nor any facts sufficient to support such an inference. To the contrary, the complaint alleges that Ford was working under the authority of his employer, the Tuolumne County Sheriffs Department. Plaintiffs' state law claims must be DISMISSED, without prejudice.

**5. California Constitutional Claim**

Defendants contend that the FAC fails to state a cause of action for violations of the California Constitution because damages are not recoverable for alleged violations of the

**14**

California Constitution absent statutory or common law authority. (Motion to Dismiss at 16). Plaintiffs point to California Civil Code section 52.1(b), which provides:

> Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (a), may institute and prosecute in his or her own name and on his or her own behalf a civil action for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured.

The FAC does not clearly allege a cause of action under section 52.1 predicated on the unlawful search Plaintiffs were subjected to. The caption of Plaintiffs' fifth cause of action identifies only Article I, section 13 of the California Constitution as the basis for Plaintiffs' claim. Plaintiffs' counsel conceded at oral argument that their California constitutional claim should be re-pled under section 52.1. Plaintiffs' stand-alone cause of action under the California Constitution is DISMISSED, with prejudice.

**6. Unruh Act Claims**

Defendants contend that the FAC fails to state a claim for damages under California Civil Code section 52, California's Unruh Act, because the FAC does not allege that Plaintiff's were members of a protected class. *See, e.g.*, *Koebke v. Bernardo Heights Country Club*, 36 Cal. 4th 824, 840-41 (Cal. Ct. App. 2008) (discussing three-part test for determining whether group is subject to Unruh Act protections). The FAC fails to allege that they were discriminated against on account of their membership in a group protected under the Unruh Act. At oral argument,

**15**

Plaintiffs' counsel conceded that Plaintiff's claim is properly brought under the Bane Act, not the Unruh Act. Plaintiffs' Unruh Act claim is DISMISSED, with prejudice.

**ORDER**

For the reasons stated, IT IS ORDERED:

1) Plaintiffs' unexhausted state law claims against Tuolomne County are DISMISSED, with prejudice;

2) Plaintiffs' federal claims against Tuolumne County are DISMISSED, without prejudice;

3) Plaintiffs' federal conspiracy claim is DISMISSED, without prejudice;

4) All state law claims against Defendant Ford are dismissed, without prejudice,

5) Plaintiffs shall file an amended complaint within twenty (20) days of service of the Memorandum Decision. Defendants shall filed a response within ten (10) days of service of the amended complaint; and

6) Defendants shall submit a form of order consistent with this Memorandum Decision within fifteen (15) days following electronic service of this decision.

**IT IS SO ORDERED.**

Dated: December 22, 2010          /s/ OLIVER W. WANGER
                                  United States District Judge