**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ADDISON DEMOURA, JESSICA DEMOURA, AND JOHN DOE,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>ANDREW J. FORD, et al.,<br><br>　　　　Defendants. | 1:09-cv-01344-OWW-GSA<br><br>MEMORANDUM DECISION REGARDING MOTION TO DISMISS SECOND AMENDED COMPLAINT (Doc. 78) AND MOTION FOR SANCTIONS (Doc. 88) |

### I. INTRODUCTION.

Plaintiffs Addison Demoura, Jessica Demoura, and John Doe, a minor, ("Plaintiffs") proceed with an action pursuant to 42 U.S.C. § 1983 against Defendants Andrew Ford, the County of Tuolomne, and others. On January 14, 2011, Plaintiff's first amended complaint ("FAC") was dismissed, with leave to amend. (Doc. 68).

Plaintiffs filed a second amended complaint ("SAC") on January 18, 2011. (Doc. 69). On February 22, 2011, Defendant Ford filed a motion to dismiss the SAC. (Doc. 78). Plaintiffs filed opposition to the motion to dismiss on May 2, 2011. (Doc. 91).

### II. FACTUAL BACKGROUND.

This action arises out of the execution of search warrants at Plaintiffs' residence by law enforcement officers purportedly working on behalf of the Tuolomne County Sheriff's Office, the

Stanislaus County Sheriff's Office, the City of Oakdale, and two law local law enforcement agencies: the Central Valley High Intensity Drug Trafficking Area Task Force ("HIDTA") and the Stanislaus Drug Enforcement Agency ("SDEA").

On, July 25, 2007, Defendant Ford presented a Statement of Probable Cause ("Statement") in support of a search warrant to a magistrate to authorize the search of Plaintiffs' residence and of Addison Demoura's place of business, which operated under the business name Oakdale Natural Choice Collective ("ONCC"). (FAC at 5). The FAC alleges that at all times relevant, ONCC was an association of medical marijuana patients commonly known as a medical marijuana collective that was established under the provisions of the California Medical Marijuana Program Act, and that Plaintiffs and ONCC were operating legally under relevant California law. (FAC at 10). The FAC further alleges that all Defendants possessed knowledge ONCC was operating lawfully within the provisions of the California Medical Marijuana Program Act. (FAC at 12).

Ford's Statement detailed facts learned through surveillance of Plaintiffs residence and of ONCC. Ford's Statement provided, in pertinent part[1]:

> I and other agents...are currently investigating the illege [sic] possession, possession for sales /and or sales of marijuana from a business identified as the

---

[1] The facts listed below are those that are material to the issue of whether Ford's statement contained sufficient information to support a finding of probable cause regarding the unlawful sale of marijuana at ONCC. Plaintiffs submitted a copy of the Statement in connection with a request for judicial notice. (Doc. 53, Ex. 7). Although Ford's Statement was not appended to the FAC, it is incorporated by reference therein, and the court may consider the Statement without converting the motion to dismiss into a motion for summary judgment. *See, e.g.*, *United States v. Ritchie*, 342 F.3d 903, 910 (9th Cir. 2003).

**2**

"Oakdale Natural Choice Collective" (ONCC)...Assisting agents in this investigation is a confidential reliable informant, hereinafter referred to as CRI...

On 06/02/07 at approx. 1400 hours, Stanislaus Drug Enforcement Agency Sherriff's Segeant William Pooley Walked by ONCC. Pooley observed three male subjects standing in front of the business. All were wearing hospital scrubs, appeared to be employees, and were letting customers in and out of the business. Pooley could smell a strong odor of marijuana coming from inside the business.

On 06/04/07 Agent Gary Guffey and I were officially assigned the case to investigate. From approx. 1400-1500 hours we conducted surveillance at ONCC. We observed sic customers go in to the business empty handed, and then leave carrying small white paper bags. During the survelliance Agent Guffey walked by the front of ONCC. Guffey could smell a strong odor of marijuana coming from inside.

On 06/04/07 I obtained a copy of the City of Oakdale's Business License for the [ONCC]. The license listed the owner as Addison Demoura, AKA: "Andrew". The license listed Demoura's residence...Demoura listed the ONCC business as "Retail Sales" and the products he sold as being soaps, lotions, and "natural therapeutic products."

On 06/06/07 Agents conducted surveillance at ONCC between 1700-1900 hours. During this time frame a total of twelve customers were seen going in and out of ONCC. All went in empty handed, and came out carrying small white paper bags. During the surveillance agents again saw male subjects work as door/security men...

On 07/10/07 Agents met with a CRI at a prearranged location for the purpose of conducting a controlled buy of marijuana from ONCC...The CRI entered ONCC and contacted a male subject...The CRI observed some props and displays of soaps and/or lotions in the front lobby area of the business. After completing paperwork the CRI was led into a second room where a third employee...was working behind a counter. The CRI was presented marijuana displayed in jars and located on top of the counter. The marijuana was individually named and color-coded. The CRI estimated the marijuana...to be approx. two pounds in total weight. The CRI purchased marijuana with the provided funds from the employee working behind the counter, and then immediately exited the business...

On 07/16/07 Agents conducted surveillance at ONCC owner Addison Demoura's residnece...at approx. 1000 hours Demoura left his residence carrying a backpack and drove directly to ONCC. Within an hour, several customers were

1  seen going into the business empty handed, and the leaving carrying white paper bags.

2  On 07/18/06, Agent Jaston Tosta contacted Stanislaus County Counsel W. Dean Wright and requested insight regarding Stanislaus County's policy and procedure regarding cannabis clubs and marijuana dispensaries. Attorney Wright advised Agent Tosta that Stanislaus county does not recognize or permit businesses engaged in the sale of "medical marijuana" within the County.

On 07/18/07 I contacted Oakdale City Manager Steven Hallam via telephone and requested insight regarding The City of Oakdale's policy and procedure regarding cannabis clubs and marijuana dispensaries. City Manager Hallam advised me that the City of Oakdale does not recognize or permit businesses engaged in the sale of "medical marijuana" within the County. Based on my conversation with City Manager Hallam, it is clear to me the business [ONCC] is operating illegally within the City of Oakdale.

Based on Ford's statement, a magistrate judge issued a search warrant for ONCC and for Addison Demoura's residence.

Defendant Ford and others executed a search warrant at Plaintiffs' residence and at ONCC on July 31, 2007. (FAC at 6). In addition to alleging that the search was unlawful, the FAC alleges that the officers executing the search warrant employed excessive force during the search.

### III. <u>LEGAL STANDARD</u>.

Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1990). To sufficiently state a claim to relief and survive a 12(b)(6) motion, the pleading "does not need detailed factual allegations" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Mere "labels and conclusions" or a "formulaic

**4**

recitation of the elements of a cause of action will not do." *Id*. Rather, there must be "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. In other words, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal quotation marks omitted).

The Ninth Circuit has summarized the governing standard, in light of *Twombly* and *Iqbal*, as follows: "In sum, for a complaint to survive a motion to dismiss, the nonconclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir.2009) (internal quotation marks omitted). Apart from factual insufficiency, a complaint is also subject to dismissal under Rule 12(b)(6) where it lacks a cognizable legal theory, *Balistreri*, 901 F.2d at 699, or where the allegations on their face "show that relief is barred" for some legal reason, *Jones v. Bock*, 549 U.S. 199, 215, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007).

In deciding whether to grant a motion to dismiss, the court must accept as true all "well-pleaded factual allegations" in the pleading under attack. *Iqbal*, 129 S.Ct. at 1950. A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001). "When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for

summary judgment, and it must give the nonmoving party an opportunity to respond." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider certain materials-documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice-without converting the motion to dismiss into a motion for summary judgment." *Id*. at 908.

## IV. **DISCUSSION**.

Defendant Ford contends that the SAC's seventh cause of action pursuant to California Civil Code section 52 *et seq*. must be dismissed for failure to comply with the California Tort Claims Act. The California Tort Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board no more than six months after the cause of action accrues. *See* Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2. Presentation of a written claim, and action on or rejection of the claim, are conditions precedent to suit. *State v. Superior Court of Kings County (Bodde)*, 32 Cal. 4th 1234, 1245, 13 Cal. Rptr. 3d 534, 90 P.3d 116 (2004); *Mangold v. California Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995). Where compliance with the California Tort Claims Act is required, the plaintiff has the burden of pleading and proving compliance with the California Government Claims Act. *Id*.

The SAC alleges that Plaintiffs complied with the California Tort Claims Act as to Stanislaus County, and that Defendant Ford was employed by the SDEA and HIDTA–agencies purportedly established by Stanislaus County--and acting under their authority at the time

of the incident. Defendant Ford contends that the SAC's allegation that he was employed by SDEA and HIDTA are false.

The California Tort Claims Act "defines a public employee, tautologically, as 'an employee of a public entity;' an employee may be 'an officer...employee, or servant, whether or not compensated.'" *Briggs v. Lawrence*, 230 Cal. App. 3d 605, 613 (Cal. Ct. App. 1991) (citing Cal. Gov. Code §§ 811.4, 8.10.2). The California Legislature intended for the word "servant" to be more restrictive than the term "agent." *Townsend v. Cal.*, 191 Cal. App. 3d 1530, 1533 (Cal. Ct. App. 1987). California courts consider the criteria set forth in the Restatement Second of Agency in determining whether or not an individual is a "servant" within the meaning of California Government Code section 8.10.2:

> The Restatement defines a "servant" (generally equivalent to an employee) as "a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control. . .
>
> In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:
>
> (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
>
> (b) whether or not the one employed is engaged in a distinct occupation or business;
>
> (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
>
> (d) the skill required in the particular occupation;
>
> (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
>
> (f) the length of time for which the person is employed;

**7**

   (g) the method of payment, whether by the time or by the job;

   (h) whether or not the work is a part of the regular business of the employer;

   (i) whether or not the parties believe they are creating the relation of master and servant; and

   (j) whether the principal is or is not in business.

*See Briggs*, 230 Cal. App. 3 d at 615-16 (relying on Rest.2d Agency, § 220 in determining applicability of section 8.10.2); *accord Townsend*, 191 Cal. App. 3d at 1534 (same). In addition to the Restatement, California courts also turn to the statutory and decisional law of California's workers compensation scheme in determining the applicability of section 8.10.2. *See Townsend*, 191 Cal. App. 3d at 1535 ("Of course the statutory law is a primary source of public policy declarations, and one of the most significant modern adjuncts of the employer-employee relationship is the workers compensation scheme. Hence, the Legislature's definition of "employee" in that area is of great significance in analyzing the issue confronting us.").

  The SAC contains a single factual allegation describing the SDEA, which states only that SDEA "is an agency formed under Government Code Section 6508, which operates within the County of Stanislaus." The SAC also contains the conclusory allegation that Defendants Ford, Guffey, and Tosta were "employed" by SDEA, however, the SAC does not contain sufficient factual allegations to support this assertion. *Inter alia*, the SAC does not allege facts establishing the extent to which SDEA exercised control over officers employed by other jurisdictions, the nature of SDEA's authority with respect to other law enforcement agencies, or what

**8**

SDEA's operational role was in connection with the incident Plaintiffs' complain of.

Defendant submits his own declaration, the declaration of the Tulare County Undersheriff, and the declaration of an Administrative Sergeant with the Stanislaus County Sheriff's Office, as evidence in support of his factual assertion that he was not employed by SDEA or HIDTA at the time of the incident. Defendant seeks dismissal with prejudice based on the evidence he has presented. None of the hearsay declarations is subject to judicial notice and none may be considered in resolving Defendant's motion to dismiss. *See* Fed. R. Civ. P. 12. Further, Defendant's contention that, as a matter of law, he cannot be found to be an employee of Stanislaus County because (1) he was employed by Tuolomne County at the time of the incident; and (2) Stanislaus County never paid him, are each incorrect. First, the fact that Ford was employed by Tuolomne County does not establish that we was not also an employee of another joint task force entity and acting pursuant to his duties to that entity at the time of the incident. *See Brassinga v. City of Mountain View*, 66 Cal. App. 4th 195, 209 (Cal. Ct. App. 1998) ("Where an employer sends an employee to do work for another person, and both have the right to exercise certain powers of control over the employee, that employee may be held to have two employers--his original or 'general' employer and a second, the 'special' employer.").[2]  Second, lack of compensation

---

[2] In *Brassinga,* it was undisputed that the defendant police officer was employed by the Palo Alto Police Department. At the time of the accident underlying the law suit, defendant was participating in an exercise carried out by a "Regional Team" comprised of several separate police departments. The Court held that defendant's employment with the Palo Alto Police Department did not preclude a finding that he was also an employee of another city's police department at the

from an entity does not establish the lack of an employee-employer relationship. See, e.g., *Munoz v. City of Palmdale*, 75 Cal. App. 4th 367, 371 (Cal. Ct. App. 1999) ("lack of compensation is not dispositive of [] nonemployee status").

Nevertheless, because the SAC does not allege facts sufficient to support an inference that Ford was an "employee" or "servant" of either SDEA or HIDTA at the time of the incident, the SAC is subject to dismissal without prejudice.

## V. **MOTION FOR SANCTIONS**.

As discussed above, Plaintiffs have a colorable legal basis for asserting that Ford was an "employee" or "servant" of Stanislaus County within the meaning of the California's Tort Claims Act for the purposes of the incident. Even if Plaintiffs are ultimately unable to plead sufficient facts to properly allege that Ford was an "employee" or "servant," there is sufficient factual and legal basis to render Plaintiffs' position nonfrivolous. Rule 11 sanctions are inappropriate.

## **ORDER**

For the reasons stated, IT IS ORDERED:

1) Plaintiffs seventh cause of action is DISMISSED, without prejudice;

2) Defendant's motion for sanctions is DENIED;

3) Plaintiffs shall file an amended complaint within thirty days of electronic service of this decision; Defendants shall file responsive pleading within thirty days of service of an amended complaint; and

---

time of the incident.

**10**

4) Defendants shall submit a form of order consistent with this decision within five days of electronic service of this decision.

IT IS SO ORDERED.

**Dated:   May 23, 2011**                              **/s/ Oliver W. Wanger**
                                                                                UNITED STATES DISTRICT JUDGE