**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

ADDISON J. DEMOURA, et al.,

Plaintiffs,

v.

ANDREW J. FORD, et al.,

Defendants.

_______________________________________/

CASE NO. 1:09-cv-01344-LJO-SKO

**ORDER DENYING PLAINTIFFS' APPLICATION TO FILE SIXTH AMENDED COMPLAINT**

(Docket No. 171)

## I. INTRODUCTION

On April 12, 2012, Plaintiffs Addison J. Demoura, Jessica Demoura, and John Doe, a minor, (collectively, "Plaintiffs") filed an application to file a sixth amended complaint. (Doc. 171.) Plaintiffs seek to add seven Doe Defendants whose identities were recently disclosed by the City of Oakdale. On May 2, 2012, Defendants Andrew J. Ford ("Ford") and City of Oakdale ("Oakdale") each filed opposition briefs (Docs. 173, 175), and Defendants County of Stanislaus ("Stanislaus") and Jason Tosta ("Tosta" or, collectively, "Defendants") filed joinders to the oppositions. Plaintiffs filed a reply brief on May 8, 2012. (Doc. 179.)

The Court reviewed the parties' briefs and supporting documents and determined that this matter is suitable for decision without oral argument; as such, the hearing scheduled for May 16, 2012, was VACATED. For the reasons set forth below, Plaintiffs' application to amend the complaint is DENIED.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. Factual Background

Plaintiffs' initial complaint was filed on July 31, 2009. (Doc. 1.) The current operative complaint is the fifth amended complaint, filed on January 27, 2012, against Defendants Ford, Tosta, Stanislaus, and Oakdale. (Doc. 164.)

This action arises out of the alleged unlawful execution of search warrants. Pursuant to the fifth amended complaint, Plaintiffs allege that on July 25, 2007, Defendant Ford, a police officer, presented to a magistrate judge a statement of probable cause in support of a search warrant for the search of Plaintiffs' residence and Addison Demoura's place of business, which operated under the business name Oakdale Natural Choice Collective ("ONCC"). (Doc. 164, ¶¶ 14, 33-35.) Plaintiffs assert that Ford's affidavit contained material misstatements and omissions, that it failed to allege sufficient credible evidence to establish probable cause for the search, and that Ford and Tosta agreed to present to the magistrate judge the affidavit knowing that it contained material misstatements and omissions. (Doc. 164, ¶¶ 33-35.)

Plaintiffs allege that Defendants possessed facts that ONCC "may have been an association of medical marijuana patients commonly known as a medical marijuana collective that was established under the provisions of the California Medical Marijuana Program Act." (Doc. 164, ¶ 63.) During a multi-agency investigation of the ONCC, Plaintiffs claim that a confidential informant procured marijuana that was "clearly labeled 'for medical use only.'" (Doc. 164, ¶ 66.) Plaintiffs allege that the confidential informant "reported that ONCC operated in a manner that was the same as those operating procedures of another medical marijuana collective that was identified as the California Health Collective" ("CHC"), and that "[a]ll natural person Defendants" were aware that the CHC "was an association of medical marijuana patients and caregivers operating under

California State Law within the provisions of the California Medical Marijuana Program Act" ("MMPA") (Doc. 164, ¶¶ 66, 70.)

Plaintiffs claim that Defendants, prior to obtaining the search warrant, "agreed to conceal and/or omit any evidence plainly relevant to CHC's compliance with the MMPA, which would negate probable cause for the search, in an effort to mislead the judge in securing a search warrant." (Doc. 164, ¶ 72.) Plaintiffs allege that the affidavit submitted in support of the search warrant "omitted all exculpatory observations and evidence which would establish that Addison and ONCC were engaged in the lawful distribution of marijuana under the provisions of the Medical Marijuana Program Act." (Doc. 164, ¶ 75.)

On July 31, 2007, Ford, Tosta, and unnamed Doe Defendants executed the search warrant for Plaintiffs' residence and the ONCC. (Doc. 164, ¶¶ 36-38.) Ford and Tosta allegedly detained Plaintiffs "with the use of handcuffs, and a threat of lethal force, and force involving the pressing of the muzzle of their automatic firearms against Addison's person, and pointing their automatic firearms at Plaintiffs." (Doc. 164, ¶ 39.)

On May 12, 2009, in the criminal prosecution resulting from evidence obtained during the searches, Addison Demoura filed a motion to quash and traverse the search warrant "on the grounds that the search warrant affidavit contained material misstatements and omissions" and thus failed to allege sufficient credible evidence to establish probable cause. (Doc. 164, ¶ 77.) On October 16, 2009, the California Superior Court granted Addison's motion and dismissed the underlying criminal action. (Doc. 164, ¶ 78.) The prosecution did not appeal the order and dismissal. (Doc. 106, ¶ 79.)

Plaintiffs bring this suit based upon the alleged unlawful search of their residence. Plaintiffs' fifth amended complaint alleges causes of action for (1) violation of Constitutional rights, unlawful search; (2) excessive force in violation of the Fourth and Fourteenth Amendments; (3) conspiracy; (4) violation of Constitutional rights by failing to adequately train and supervise; (5) assault; (6) battery; and (7) statutory and state constitutional violations based on presenting a false affidavit in support of a search warrant and executing a search warrant supported by the false affidavit. (Doc. 164.)

**B. Procedural History**

Plaintiffs filed their initial complaint on July 31, 2009, against Ford, Tosta, Stanislaus, Oakdale, and William Pooley ("Pooley"), Gary Guffey ("Guffey"), and County of Tuolumne ("Tuolumne"). (Doc. 1.) Summonses were issued on August 3, 2009, but were not served at that time. (Docs. 3-8.) On March 12, 2010, the Court set a hearing for dismissal due to lack of prosecution. (Doc. 16.) On April 6, 2010, Plaintiffs' newly substituted attorney, Rebecca P. Mendribil, filed an affidavit declaring that she forwarded the case documents for process of service on that date. (Doc. 22, ¶ 7.) As such, the Court did not dismiss Plaintiffs' case. (Doc. 26.)

On April 28, 2010, Defendants filed a motion to dismiss, which the Court granted with leave to amend on July 2, 2010. (Docs. 27, 33.) Plaintiffs filed a first amended complaint on August 2, 2010; answers were filed by Defendants Tosta, Guffey, Stanislaus, and Oakdale, while Defendants Tuolumne and Ford filed a motion to dismiss. (Docs. 34, 41-44, 46.) On December 27, 2010, the Court issued a memorandum decision regarding the motion to dismiss, dismissing the state and federal law claims against Tuolumne, the federal conspiracy claim, and the state law claims against Ford, and allowing Plaintiffs leave to file an amended complaint. (Doc. 66.) On January 14, 2011, an order was issued memorializing the memorandum decision. (Doc. 68.)

On January 18, 2011, Plaintiffs filed a second amended complaint. (Doc. 69.) Plaintiffs stipulated to dismiss Defendants Tuolumne and Guffey. (Docs. 71, 73, 75-76.) Answers were filed by Tosta and Oakdale, and Ford filed a motion to dismiss. (Docs. 77-79.) On May 23, 2011, the Court issued a memorandum decision dismissing Plaintiffs' seventh cause of action for violation of California Civil Code section 52 *et seq*. and granting Plaintiffs leave to amend the complaint; an order memorializing that decision was issued on June 6, 2011. (Docs. 98, 100.)

A scheduling conference was held before District Judge Oliver W. Wanger on July 1, 2011, and a scheduling conference order was issued on July 5, 2011. (Docs. 104, 105.) The scheduling order set forth the following deadlines:

Rule 26 Initial Disclosures Deadline: 7/15/2011

Non-expert Discovery Deadline: 3/1/2012

Designation of Expert Witnesses due by 4/6/2012

Discovery due by 6/7/2012

Settlement Conference set for 6/14/2012

Non-Dispositive Motions filed by 6/26/2012

Dispositive Motions filed by 7/16/2012

Non-Dispositive Motions Hearing set for 8/1/2012

Dispositive Motions Hearing set for 8/20/2012

Pretrial Conference set for 9/24/2012

Trial set for 11/6/2012

(Doc. 105.)

Also on July 5, 2011, Plaintiffs filed their third amended complaint; answers were filed by Defendants Ford, Tosta, Oakdale, and Stanislaus. (Docs. 106, 108-10, 112.)

On November 8, 2011, Plaintiffs filed a motion for a protective order forbidding inquiry into certain matters, and a motion to stay Plaintiffs' depositions. (Docs. 118, 119.) On November 21, 2011, Ford filed a discovery motion to have matters deemed admitted, and on November 22, 2011, Ford filed motions to compel Plaintiffs' answers to interrogatories and to compel production of documents. (Docs. 127, 130, 131.)

Plaintiffs indicate that on November 22, 2011, they propounded special interrogatories and requests for production on Oakdale. The discovery requested, in part, that Oakdale identify every police officer who participated in the July 31, 2007, execution of the search warrant at Plaintiffs' home, describe in detail the officers' precise acts, and produce documents related to the search warrant execution. (*See* Doc. 179, 5:10-24.)

On December 20, 2011, the parties appeared for a telephonic conference regarding Plaintiffs' motion for a protective order and Ford's discovery motions. (Doc. 147.) The Court ordered the parties to meet and confer regarding Ford's discovery disputes. (Doc. 148.) On December 21, 2011, a hearing was held regarding Plaintiffs' motion for a protective order. (Doc. 149.) In light of Plaintiffs' stipulation to waive Addison Demoura's claim for economic damages, the Court ordered the parties to meet and confer regarding the protective order and that Plaintiffs file either a voluntary

dismissal or amended complaint dismissing Addison Demoura's economic claims. (Doc. 150.) Plaintiffs' fourth amended complaint was filed on December 22, 2011. (Doc. 151.)

The parties were able to come to an agreement regarding their discovery disputes and stipulated to allow Plaintiffs to file a fifth amended complaint that incorporated Defendants' concerns regarding the fourth amended complaint. (Docs. 155, 169.) On January 23, 2012, the Court issued an order dismissing Plaintiffs' motion for a protective order without prejudice, allowing Plaintiffs to file a fifth amended complaint, and modifying the schedule to extend the non-expert discovery deadline to June 1, 2012. (Doc. 162.) No other amendments to the scheduling order were made. (Doc. 162, 2:11-12.) On January 27, 2012, Plaintiffs filed the fifth amended complaint, which is the current operative pleading. (Doc. 164.) All Defendants have filed answers. (Docs. 165-68.)

Plaintiffs indicate that on February 21, 2012, Oakdale provided responses to Plaintiffs' discovery requests, including the identities of the police officers involved in the execution of the search warrant on Plaintiffs' residence. (Doc. 179, 6:3-5.)

On April 9, 2012, the parties filed a stipulation and proposed order requesting to extend the expert discovery deadline, stipulating that all expert witnesses be disclosed by May 7, 2012, that any rebuttal or supplemental expert disclosures be made by May 18, 2012, and that all expert discovery be completed by June 15, 2012. (Doc. 169.) No other requests were made to modify the scheduling order. (*See* Doc. 169.) The Court approved the request on the same date. (Doc. 170.)

On April 12, 2012, Plaintiffs filed the instant application seeking to file an amended complaint. (Doc. 171.)

## III. DISCUSSION

### A. Contentions of the Parties

On April 12, 2012, Plaintiffs filed an application to file a sixth amended complaint and requested that summonses be issued. (Doc. 171.) Plaintiffs seek to add seven additional defendants, peace officers and members of the Defendant Oakdale's special weapons and tactics ("SWAT") team, who were allegedly present at the time the search warrant was executed upon Plaintiffs' residence. (Doc. 171, 3:1-3, 8:15-23.) Plaintiffs assert that they learned the identity of the SWAT officers from Oakdale on February 27, 2012. (Doc. 171, 3:4-5.) Plaintiffs contend that they had alleged claims

against the previously unknown defendants, as Does 21-30, under the second, fifth, and sixth causes of action. (Doc. 171, 3:6-7, 8:15-18.)

Defendant Ford filed an opposition on May 2, 2012. (Doc. 173.) Ford contends that Plaintiffs have been dilatory in seeking amendment. The alleged unlawful search of Plaintiffs' residence occurred on July 31, 2007, and the original complaint was filed on July 31, 2009. (Doc. 173, 1:23-24.) Ford contends that no allegations were made in the initial complaint against any Doe Defendants employed by Oakdale, despite the fact that discovery dated March 17, 2008, in the underlying criminal action, identified the Oakdale SWAT team as having made the initial contact and entry into Plaintiffs' residence. (Doc. 173, 2:5-11.)

Ford asserts that Plaintiffs' first amended complaint, filed on August 2, 2010, allegedly changed the identity of the Doe Defendants without the Court's permission. (Doc. 173, 2:17-22.) After the first and second complaints were dismissed with leave to amend, Plaintiffs filed their third amended complaint on July 5, 2011. (Doc. 173, 3:1-4.) On November 22, 2011, approximately two years and four months after filing the original complaint, Plaintiffs finally served interrogatories on Oakdale requesting the identity of the SWAT officers who participated in the search. (Doc. 173, 3:5-7.) On December 22, 2011, pursuant to the Court's order after Addison Demoura waived his claim to economic damages, Plaintiffs filed a fourth amended complaint, and the parties stipulated to a fifth amended complaint, which was filed on January 27, 2012. (Doc. 173, 3:8-11.) Ford asserts that "[n]o attempt was made at that time to substitute the true names of any Doe Defendants, nor did plaintiffs indicate their intent to add the individual Oakdale SWAT team members as parties at any time during the negotiations with defendants for the Fifth Amended Complaint." (Doc. 173, 3:12-14.)

On February 21, 2012, Oakdale responded to Plaintiffs' first set of interrogatories and identified the SWAT officers Plaintiffs now seek to add as defendants. (Doc. 173, 3:22-23.) On April 9, 2012, the parties agreed to extend the expert discovery deadlines. Ford contends that "[a]t no time during those discussions did plaintiffs indicate that they were going to amend their Complaint yet again to add new defendants." (Doc. 173, 3:24-27.) Ford states that the non-expert discovery deadline closes on June 1, 2012, and Plaintiffs' attempt to add seven new defendants at this

time, who have not been timely served or previously named in this case, is "no more than a sham" and an attempt to "delay the action." (Doc. 173, 4:8-13.)

Ford asserts that Plaintiffs' conduct has been dilatory; Plaintiffs filed the complaint on July 31, 2009, but did not seek the names of the individual SWAT officers until November 2011, more than two years after the case was filed. Further, Plaintiffs are seeking additional amendments that have nothing to do with the Doe Defendants and instead seek to add new allegations against Ford and the dismissed defendant Guffey. (Doc. 173, 6:27-7:7.) Ford asserts that Plaintiffs are seeking to introduce a new theory of liability in this case for *Monell* claims. (Doc. 173, 8:1-22.) Additionally, Ford asserts that Plaintiffs' proposed allegations are futile because the claims against the new defendants are time-barred and do not relate back to the initial complaint. (Doc. 173, 8:23-13:8.)

Oakdale also filed an opposition on May 2, 2012. (Doc. 175.) Oakdale raises similar contentions as those in Ford's opposition, and asserts that "Plaintiffs have been aware of the SWAT team officers' involvement in the underlying incident and the facts giving rise to the claims against said officers, as alleged in the proposed Sixth Amended Complaint, since the inception of this lawsuit." (Doc. 175, 3:15-17.) Oakdale contends that Plaintiffs have provided no explanation or basis to allow the requested amendment and no explanation for their delay in seeking amendment. (Doc. 175, 4:8-13.) Oakdale states that Plaintiffs' proposed amendment fails to satisfy the relation-back requirements of Federal Rule of Civil Procedure 15(c)[1] and that Plaintiffs unduly delayed in seeking amendment. (Doc. 175, 5:26-6:27.) Oakdale further contends that amendment at this time is improper because the delay was caused by Plaintiffs' lack of action and is prejudicial to the existing and new defendants. (Doc. 175, 11:16-17:24.) Further, Plaintiffs' claims are futile due to Plaintiffs' failure to comply with the strict requirements of the California Tort Claims Act. (Doc. 175, 17:25-20-2.)

[1] Oakdale cites Federal Rule of Procedure 15(c)(3)(C) for the proposition that the new defendants did not received notice within a required time frame. Rule 15 has been amended, and there is no longer a subsection (c)(3) under Rule 15. *See* Fed. R. Civ. P. Rule 15 and Rule 15 Advisory Committee Notes.

Defendants Stainislaus and Tosta filed joinders to Ford and Oakdale's oppositions. (Docs. 176-178.)

In the reply filed on May 8, 2012, Plaintiffs contend that "[t]hroughout this litigation all of the defendants, as members of the 'prosecution team' of the underlying criminal matter, knew, or should have known, that the proposed defendants . . . were employed by the City of Oakdale, and specially employed by the County of Stanislaus, at the time Plaintiffs were searched, assaulted, battered, arrested and incarcerated." (Doc. 179, 7:3-9.) As such, the defendants "had full knowledge of all the acts[] which the proposed defendants committed during the incident." (Doc. 179, 7:10-12.) Further, Plaintiffs assert that since the original complaint was served on Oakdale, the proposed defendants knew or should have known that they would be named in this action; thus, there is no prejudice. (Doc. 179, 8:3-12.) Plaintiffs contend that any statute of limitations period was tolled by the prosecution of the underlying criminal case. (Doc. 179, 10:8-25.) Finally, Plaintiffs state Defendants have unclean hands regarding their objection that the amendment is sought near the end of the discovery cutoff, since Plaintiffs requested the identity of the SWAT team officers on November 22, 2011, and Defendants did not respond until February 21, 2012, after receiving requested extensions of time from Plaintiffs. (Doc. 179, 11:9-20.)

## B. Legal Standards

### 1. Standard for Amending the Pleadings Under Federal Rule of Civil Procedure 16(b)

Federal Rule of Civil Procedure 16(b) provides that the district court must issue a scheduling order that limits the time to join other parties, amend the pleadings, complete discovery, and file motions. Fed. R. Civ. P. 16(b)(1)-(3). Once in place, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The "good cause" requirement of Rule 16 primarily considers the diligence of the party seeking the amendment. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). "The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension." *Id.* (internal citation and quotation marks omitted).

Good cause may be found to exist where the moving party shows, for example, that it: (1) diligently assisted the court in recommending and creating a workable scheduling order, *see In re San Juan Dupont Plaza Hotel Fire Litig.*, 111 F.3d 220, 228 (1st Cir. 1997), (2) is unable to comply with the deadlines contained in the scheduling order due to issues not reasonably foreseeable at the time of the scheduling order, *see Johnson*, 975 F.3d at 609, and (3) was diligent in seeking an amendment once the party reasonably knew that it could not comply with the scheduling order, *see Eckert Cold Storage, Inc. v. Behl*, 943 F. Supp. 1230, 1233 (E.D. Cal. 1996); *see also Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999). "If [the] party was not diligent, the inquiry should end." *Johnson*, 975 F.2d at 609. If the Court finds that there is good cause to modify the schedule, the court then turns to Rule 15(a) to determine whether the amendment sought should be granted. *Jackson*, 186 F.R.D. at 607 ("As the Ninth Circuit explained in [*Johnson*], once the district court has filed a pretrial scheduling order pursuant to Rule 16 which establishes a timetable for amending pleadings, a motion seeking to amend pleadings is governed first by Rule 16(b), and only secondarily by Rule 15(a).").

**2. Standard for Amendment Under Federal Rule of Civil Procedure 15(a)**

Federal Rule of Civil Procedure 15 provides that a party may amend its pleading only by leave of court or by written consent of the adverse party and that leave shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(1)-(2). The Ninth Circuit has instructed that the policy favoring amendments "is to be applied with extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).

The factors commonly considered to determine the propriety of a motion for leave to amend are: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, and (4) futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Ninth Circuit has held that it is the consideration of prejudice to the opposing party that carries the greatest weight. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Absent prejudice, or a strong showing of any of the remaining *Foman* factors, a presumption in favor of granting leave to amend exists under Rule 15(a). *Id.* Further, undue delay alone is insufficient to justify denial of a motion to amend. *Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999). Finally, "[a]mendments seeking to add claims are to be

granted more freely than amendments adding parties." *Union Pac. R.R. Co. v. Nev. Power Co.*, 950 F.2d 1429, 1432 (9th Cir. 1991); *contra DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) ("[L]iberality in granting leave to amend is not dependent on whether the amendment will add causes of action or parties.").

**C. Analysis**

**1. Plaintiffs Have Exhibited a Lack of Diligence and Have Not Established Good Cause as Required Under Federal Rule of Civil Procedure 16(b)**

The Court issued a scheduling order on July 5, 2011, and the Court amended the schedule on January 23, 2012, and April 9, 2012. (Docs. 105, 162, 170.) The current deadlines include the non-expert discovery deadline set for June 1, 2012, the expert discovery deadline set for June 15, 2012, the non-dispositive motion filing deadline set for June 26, 2012, the dispositive motion filing deadline set for July 16, 2012, and the trial date set for November 6, 2012. (Docs. 105, 162, 170.) As such, discovery is set to close within two weeks, and the motion-filing deadlines are fast approaching. (Docs. 162, 170.) To allow Plaintiffs to amend the complaint to add seven new defendants, the Court would be required to extensively modify the scheduling order to allow the newly-named SWAT officer defendants time to develop their defenses and file any motions.

As noted above, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Whether good cause exists to modify a scheduling order rests on whether the party seeking the modification has been diligent. *See Johnson*, 975 F.2d at 609. Here, Plaintiffs have not been diligent in seeking amendment.

The event upon which this lawsuit is based, namely the allegedly unlawful search of Plaintiffs' residence, occurred on July 31, 2007. Plaintiffs knew or should have known at that time that SWAT officers were involved in the search regardless of whether Plaintiffs could have identified them by name. Plaintiffs' initial complaint was filed on July 31, 2009, and Plaintiffs did not serve the complaint until after the Court set a hearing for dismissal due to Plaintiffs' lack of prosecution. (Docs. 1, 16, 22.) Plaintiffs subsequently served the complaint, and the case was not dismissed. (*See* Docs. 22, 26.)

After service of the complaint, there were several motions to dismiss and amended pleadings filed; eventually the third amended complaint was filed on July 5, 2011, and the Court issued a scheduling conference order on the same date. (Docs. 105, 106.)

Although the scheduling order was issued on July 5, 2011, Plaintiffs waited until November 22, 2011, to propound discovery requests on Oakdale seeking the identities of the officers involved in the execution of the search warrant. (Doc. 179, 5:10-24.) This request was made more than four years after the underlying event occurred, more than two years after the initial complaint was filed, and more than four months after the scheduling order was in place. Plaintiffs delayed in serving their discovery requests despite the fact that Plaintiffs knew of the existence of the SWAT officers when the allegedly unlawful search occurred.

After requested extensions of time from Plaintiffs, Oakdale responded to the discovery requests on February 21, 2012. (Doc. 179, 6:1-5.) During the time that Plaintiffs propounded discovery and Oakdale responded, Plaintiffs amended their complaint twice; these amendments were by Court order and included discussions among the parties regarding the extent of Addison Demoura's damages. (*See* Docs. 150, 157-59, 162-64.) Defendants Ford and Oakdale assert that Plaintiffs did not "indicate their intent to add the individual Oakdale SWAT team members as parties at any time during the negotiations with defendants for the Fifth Amended Complaint." (Doc. 173, 3:12-15; *see also* Doc. 175, 3:25-4:1.)

Further, Plaintiffs indicate that they received Oakdale's discovery responses on February 21, 2012. (Doc. 179, 6:3-5.) After that date, on April 9, 2012, the parties filed a stipulation and proposed order to extend the expert discovery deadline to June 15, 2012; no other extensions were sought. (Doc. 169.) Defendant Ford asserts that "[t]he non-expert discovery deadline of June 1, 2012 was never discussed. At no time during [the parties'] discussions [to extend the expert discovery deadline] did plaintiffs indicate that they were going to amend their Complaint yet again to add new defendants." (Doc. 173, 3:25-27; *see also* Oakdale's opposition, Doc. 175, 3:28-4:1 ("Plaintiffs never provided the officers or the existing Defendants any indication of their intent to add the officers as defendants in this action.").)

Plaintiffs did not file the instant application to amend until April 12, 2012, approximately one and a half months after receiving Oakdale's discovery responses identifying the SWAT officers and mere days after the Court had approved the parties' stipulated request to extend the expert discovery deadline. (Docs. 170, 171.)

Plaintiffs have provided no explanation for their delay in seeking amendment, other than asserting that Defendants have "unclean hands regarding their objections that the amendments were sought within 15 days of the discovery deadline" because Oakdale requested extensions of time to respond to discovery and did not provide the information until February 21, 2012. (Doc. 179, 11:10-20.) Plaintiffs, however, do not explain why they waited until November 22, 2011, to propound discovery requests seeking the names of the SWAT officers, especially since a scheduling order had been in place since July 5, 2011, and Plaintiffs were aware of upcoming deadlines. (*See* Docs. 105, 171, 179.) Further, Plaintiffs do not explain why they failed to discuss the need to add additional defendants when they were discussing the amendments to the complaint, or when they were stipulating to new discovery deadlines after the identities of the SWAT officers had been produced. (*See* Docs. 171, 179.) Plaintiffs' failure to indicate a need to amend is particularly troubling in light of the timing of the request to extend the expert discovery deadlines, which was filed with the Court a mere three days prior to the instant application and a month and a half *after* Plaintiffs learned the identity of the SWAT members. (*See* Docs. 169, 171, 179.) At that time, Plaintiffs knew or should have known of their intent to amend the complaint, and should not have agreed to new discovery deadlines knowing that such deadlines would need to be modified.

If the Court were to allow Plaintiffs' amendment, it would be necessary to extend the discovery deadlines to allow the newly named defendants to participate in the discovery process. The Court would also need to reschedule the motion filing deadlines, the pre-trial conference, and the upcoming trial date. Plaintiffs have failed to explain their delay in seeking to amend their complaint to add the SWAT officers, and thus cannot show that they have been diligent in seeking amendment as required under Rule 16(b). As such, the Court cannot conclude that there is good cause to modify the scheduling order to allow Plaintiffs to join new parties. *See Solomon v. N. Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998) (affirming district court's denial of motion

to amend pleadings filed on the eve of the discovery deadline); *see also Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1295 (9th Cir. 2000) (affirming district court's denial of motion to amend under Rule 16(b) when the plaintiffs "have failed to show diligence").

Accordingly, as Plaintiffs have not been diligent in seeking amendment, Plaintiffs' application to amend the complaint is DENIED.

**2. Plaintiffs' Amendment Is Not Warranted Under Federal Rule of Civil Procedure 15(a)**

Although good cause does not exist under Rule 16(b) to amend the pleadings, the Court nonetheless analyzes whether, even if good cause did exist, the proposed amendment could be granted under Rule 15(a). As such, the Court considers the following factors: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, and (4) futility of amendment. *Foman*, 371 U.S. at 182.

**a. Prejudice to the Opposing Party**

As consideration of prejudice to the opposing party carries the greatest weight, the Court considers this factor first. *Eminence Capital, LLC*, 316 F.3d at 1052. "A need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint." *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999); *see also Solomon*, 151 F.3d at 1139 (affirming that a motion to amend filed on the eve of the discovery deadline "would cause undue delay and prejudice"); *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798-99 (9th Cir. 1991) (affirming denial of leave to amend where defendant would have been unreasonably prejudiced by addition of new claims only four months before trial).

Plaintiffs' proposed amendment to add seven SWAT officer defendants is highly prejudicial. Based on the current schedule in this action, the SWAT officers have essentially no time to conduct discovery, file any pretrial motions, or otherwise adequately defend their case, as the deadlines for both non-expert and expert discovery are only weeks away. (Docs. 105, 162, 170.) The non-expert discovery deadline is June 1, 2012, the expert discovery deadline is June 15, 2012, the non-dispositive motion filing deadline is June 26, 2012, and the dispositive motion filing deadline is July 16, 2012. (Docs. 105, 162, 170.) These tight deadlines do not allow the seven SWAT

officers enough time to be served, conduct discovery, develop their defenses, and file motions. Further, the pre-trial conference date is currently set for September 24, 2012, and the trial date is set for November 6, 2012; thus, the SWAT officers would not have adequate time to defend the case in this limited time frame. Moreover, amending all of these deadlines and delaying the trial prejudices the defendants currently named in the litigation.

As such, this factor weighs heavily against allowing the proposed amendment.

**b. Bad Faith in Seeking Amendment**

Defendants do not argue that Plaintiffs are seeking this amendment in bad faith. While Plaintiffs did not request to amend the complaint until after they had stipulated to a prior amendment and to a discovery deadline extension, the record does not affirmatively indicate that Plaintiffs are acting in bad faith. As such, this factor does not weigh against amendment. *See DCD Programs, Ltd.*, 833 F.2d at 187 ("Since there is no evidence in the record which would indicate a wrongful motive, there is no cause to uphold the denial of leave to amend on the basis of bad faith.").

**c. Undue Delay in Seeking Amendment**

As discussed above in the analysis under Federal Rule of Civil Procedure 16(b), Plaintiffs were not diligent is seeking amendment. Plaintiffs knew or should have known of the SWAT officers' existence when the underlying search warrant execution occurred on July 31, 2007. Plaintiffs filed their initial complaint on July 31, 2009, and waited until November 22, 2011 – almost two years and four months later – to propound discovery requesting the identities of the officers. (Doc. 1, Doc. 179, 5:10-24.) "Although delay is not a dispositive factor in the amendment analysis, it is relevant, especially when no reason is given for the delay." *Lockheed Martin Corp.*, 194 F.3d at 986 (citations omitted). Further, "[u]ndue delay is a valid reason for denying leave to amend." *Texaco, Inc.*, 939 F.2d at 798.

Additionally, Plaintiffs waited nearly two months after finally learning of the SWAT officers' identities to request amendment, and did so three days after a stipulation was submitted to the Court requesting to extend the expert discovery deadline. (Doc. 169, Doc. 179, 6:3-5.) Plaintiffs, however, did not address the need to amend the complaint when agreeing to new discovery deadlines. (Doc.173, 3:25-27; Doc. 175, 3:28-4.) Further, Plaintiffs failed to explain why they delayed in

seeking amendment. (*See* Doc. 171, 179.) As such, Plaintiffs' request to seek leave at this time to add the SWAT officers as defendants is the product of undue delay.

This factor weighs strongly against allowing the proposed amendment.

**d. Futility of Amendment**

Although the validity of the proposed amendment is not typically considered by courts in deciding whether to grant leave to amend, such leave may be denied if the proposed amendment is futile or subject to dismissal. *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991). Defendants contend that Plaintiffs' claims are time barred due to the statute of limitations and do not relate back to the original complaint. (Doc. 173, 8:23-13:20; Doc. 175, 8:17-11:15.) Plaintiffs assert that the applicable statute of limitations was tolled while the criminal action against Plaintiffs was pending. (Doc. 179, 9:8-11:8.)

As the Court has determined that Plaintiffs' application to amend should be denied on other grounds, the Court declines to address the issue of futility of amendment. *See McAfee v. California,* No. 1:07-cv-00577 OWW GSA, 2008 WL 1901338, at *5 (E.D. Cal. Apr. 28, 2008) (citing *Netbula, LLC v. Distinct Corp.*, 212 F.R.D. 534, 539 (N.D. Cal. 2003) (citations omitted) (finding that denial based on futility of amendment is rare and challenges to the merits of a proposed amended pleading generally are delayed until after leave to amend is granted and the amended pleading is filed)).

Thus, even assuming that Plaintiffs' amendment is not futile, the application to amend must be denied because Plaintiffs exhibited a lack of diligence under Rule 16(b) in seeking amendment. Further, due to prejudice to the Defendants and undue delay on the part of Plaintiffs, leave to amend under Rule 15(a) is not appropriate.

## IV. CONCLUSION AND ORDER

Accordingly, IT IS HEREBY ORDERED that Plaintiffs' application to amend the complaint (Doc. 171) is DENIED.

IT IS SO ORDERED.

**Dated: May 22, 2012**

**/s/ Sheila K. Oberto**
UNITED STATES MAGISTRATE JUDGE