UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADDISON J. DEMOURA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ANDREW J. FORD, et al.,<br><br>Defendants. | 1:09-CV-01344-LJO-SKO<br><br>ORDER DENYING MOTION FOR RECONSIDERATION (DOC. 188) |

## I. INTRODUCTION

Plaintiffs, Addison J. Demoura, Jessica Demoura, and John Doe, a minor, move for reconsideration of the Magistrate Judge's May 23, 2012 Order denying Plaintiffs' application to file a Sixth Amended Complaint adding certain named officers of the City of Oakdale's Special Weapons and Tactics ("SWAT") team as defendants in this civil rights action. Doc. 188, filed June 6, 2012. The City of Oakdale ("Oakdale") filed an opposition to the motion for reconsideration, Doc. 195, which was joined by Defendants Andrew J. Ford and Jason Tosta, Docs. 196-197.

## II. LEGAL STANDARDS

**A.     Motions for Reconsideration of Non-Dispositive Pretrial Orders.**

Federal Rule of Civil Procedure 72(a) provides:

> Nondispositive Matters. When a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days after being served with a copy. A party may not assign as error a defect in the order not timely objected to. The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.

"A judge of the court may reconsider [pretrial matters determined by a magistrate judge] where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A).

B. **Federal Rule of Civil Procedure 16(b) Standard for Amending Schedule to Permit Amendment of Pleading.**[1]

Federal Rule of Civil Procedure 16(b) provides that the district court must issue a scheduling order that limits the time to join other parties, amend the pleadings, complete discovery, and file motions. Fed. R. Civ. P. 16(b)(1)-(3). Once in place, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The "good cause" requirement of Rule 16 primarily considers the diligence of the party seeking the amendment. *Johnson v. Mammoth Recreations*, Inc., 975 F.2d 604, 609 (9th Cir. 1992). "The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension." *Id.* (internal citation and quotation marks omitted).

Good cause may be found to exist where the moving party shows, for example, that it: (1) diligently assisted the court in recommending and creating a workable scheduling order, *see In re San Juan Dupont Plaza Hotel Fire Litig.*, 111 F.3d 220, 228 (1st Cir. 1997), (2) is unable to comply with the deadlines contained in the scheduling order due to issues not reasonably foreseeable at the time of the scheduling order, *see Johnson*, 975 F.2d at 609, and (3) was diligent in seeking an amendment once the party reasonably knew that it could not comply with the scheduling order, see *Eckert Cold Storage, Inc. v. Behl*, 943 F. Supp. 1230, 1233 (E.D. Cal. 1996); *see also Jackson v. Laureate, Inc.,* 186 F.R.D. 605, 608 (E.D. Cal. 1999). "If [the] party was not diligent, the inquiry should end." *Johnson*, 975 F.2d at 609. If the Court finds that there is good cause to modify the schedule, the court then turns to Rule 15(a) to determine whether the amendment sought should be granted. *Jackson*, 186 F.R.D. at 607 ("As the Ninth Circuit explained in [Johnson], once the district court has filed a pretrial scheduling order pursuant to Rule 16 which establishes a timetable for amending pleadings, a motion seeking to amend pleadings is governed first by Rule 16(b), and only secondarily by Rule 15(a).").

---

[1] The Magistrate Judge applied this Rule 16(b) standard for amending a schedule and the Rule 15(a) standard for amending the pleadings provided below. Plaintiffs have not suggested that the Magistrate Judge applied the incorrect legal standards.

2

C.      **Federal Rule of Civil Procedure 15(a) Standard for Amending A Pleading.**

Federal Rule of Civil Procedure 15 provides that once an initial period for amendment as a matter of course has passed, a party may amend its pleading only by leave of court or by written consent of the adverse party and that leave shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(1)-(2). The Ninth Circuit has instructed that the policy favoring amendments "is to be applied with extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).

The factors commonly considered to determine the propriety of a motion for leave to amend are: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, and (4) futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Ninth Circuit has held that it is the consideration of prejudice to the opposing party that carries the greatest weight. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Absent prejudice, or a strong showing of any of the remaining *Foman* factors, a presumption in favor of granting leave to amend exists under Rule 15(a). *Id*. Further, undue delay alone is insufficient to justify denial of a motion to amend. *Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999). Finally, "[a]mendments seeking to add claims are to be granted more freely than amendments adding parties." *Union Pac. R.R. Co. v. Nev. Power Co.*, 950 F.2d 1429, 1432 (9th Cir. 1991); *contra DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) ("[L]iberality in granting leave to amend is not dependent on whether the amendment will add causes of action or parties.").

### III. DISCUSSION

A.      **Factual Background and Procedural History.**

This action arises out of the allegedly unlawful procurement and execution of search warrants at Plaintiffs' residence and place of business in Oakdale, California.  The Magistrate Judge's May 23, Order succinctly and accurately summarizes the allegations in the complaint and related procedural history:

**A. Factual Background**

Plaintiffs' initial complaint was filed on July 31, 2009. (Doc. 1.) The current operative complaint is the fifth amended complaint, filed on January 27, 2012, against Defendants [Andrew J.] Ford, [Jason] Tosta, [The County of] Stanislaus, and Oakdale. (Doc. 164.)

***Pursuant to the fifth amended complaint, Plaintiffs allege that on July 25, 2007, Defendant Ford, a police officer, presented to a magistrate judge a statement of probable cause in support of a search warrant for the search of Plaintiffs' residence and Addison Demoura's place of business, which operated under the business name Oakdale Natural Choice Collective ("ONCC"). (Doc. 164, ¶¶ 14, 33-35.) Plaintiffs assert that Ford's affidavit contained material misstatements and omissions, that it failed to allege sufficient credible evidence to establish probable cause for the search, and that Ford and Tosta agreed to present to the magistrate judge the affidavit knowing that it contained material misstatements and omissions. (Doc. 164, ¶¶ 33-35.)

Plaintiffs allege that Defendants possessed facts that ONCC "may have been an association of medical marijuana patients commonly known as a medical marijuana collective that was established under the provisions of the California Medical Marijuana Program Act." (Doc. 164, ¶ 63.) During a multi-agency investigation of the ONCC, Plaintiffs claim that a confidential informant procured marijuana that was "clearly labeled 'for medical use only.'" (Doc. 164, ¶ 66.) Plaintiffs allege that the confidential informant "reported that ONCC operated in a manner that was the same as those operating procedures of another medical marijuana collective that was identified as the California Health Collective" ("CHC"), and that "[a]ll natural person Defendants" were aware that the CHC "was an association of medical marijuana patients and caregivers operating under California State Law within the provisions of the California Medical Marijuana Program Act" ("MMPA") (Doc. 164, ¶¶ 66, 70.)

Plaintiffs claim that Defendants, prior to obtaining the search warrant, "agreed to conceal and/or omit any evidence plainly relevant to CHC's compliance with the MMPA, which would negate probable cause for the search, in an effort to mislead the judge in securing a search warrant." (Doc. 164, ¶ 72.) Plaintiffs allege that the affidavit submitted in support of the search warrant "omitted all exculpatory observations and evidence which would establish that Addison and ONCC were engaged in the lawful distribution of marijuana under the provisions of the Medical Marijuana Program Act." (Doc. 164, ¶ 75.)

On July 31, 2007, Ford, Tosta, and unnamed Doe Defendants executed the search warrant for Plaintiffs' residence and the ONCC. (Doc. 164, ¶¶ 36-38.) Ford and Tosta allegedly detained Plaintiffs "with the use of handcuffs, and a threat of lethal force, and force involving the pressing of the muzzle of their automatic firearms against Addison's person, and pointing their automatic firearms at Plaintiffs." (Doc. 164, ¶ 39.)

On May 12, 2009, in the criminal prosecution resulting from evidence obtained during the searches, Addison Demoura filed a motion to quash and traverse the search warrant "on the grounds that the search warrant affidavit contained material misstatements and omissions" and thus failed to allege sufficient credible evidence to establish probable cause. (Doc. 164, ¶ 77.) On October 16, 2009, the California Superior Court granted Addison's motion and dismissed the underlying criminal action. (Doc. 164, ¶ 78.) The prosecution did not appeal the order and dismissal. (Doc. 106, ¶ 79.)

Plaintiffs bring this suit based upon the alleged unlawful search of their residence. Plaintiffs' fifth amended complaint alleges causes of action for (1) violation of

Constitutional rights, unlawful search; (2) excessive force in violation of the Fourth and Fourteenth Amendments; (3) conspiracy; (4) violation of Constitutional rights by failing to adequately train and supervise; (5) assault; (6) battery; and (7) statutory and state constitutional violations based on presenting a false affidavit in support of a search warrant and executing a search warrant supported by the false affidavit. (Doc. 164.)

**B. Procedural History**

Plaintiffs filed their initial complaint on July 31, 2009, against Ford, Tosta, Stanislaus, Oakdale, and William Pooley ("Pooley"), Gary Guffey ("Guffey"), and County of Tuolumne ("Tuolumne"). (Doc. 1.) Summonses were issued on August 3, 2009, but were not served at that time. (Docs. 3-8.) On March 12, 2010, the Court set a hearing for dismissal due to lack of prosecution. (Doc. 16.) On April 6, 2010, Plaintiffs' newly substituted attorney, Rebecca P. Mendribil, filed an affidavit declaring that she forwarded the case documents for process of service on that date. (Doc. 22, ¶ 7.) As such, the Court did not dismiss Plaintiffs' case. (Doc. 26.)

On April 28, 2010, Defendants filed a motion to dismiss, which the Court granted with leave to amend on July 2, 2010. (Docs. 27, 33.) Plaintiffs filed a first amended complaint on August 2, 2010; answers were filed by Defendants Tosta, Guffey, Stanislaus, and Oakdale, while Defendants Tuolumne and Ford filed a motion to dismiss. (Docs. 34, 41-44, 46.) On December 27, 2010, the Court issued a memorandum decision regarding the motion to dismiss, dismissing the state and federal law claims against Tuolumne, the federal conspiracy claim, and the state law claims against Ford, and allowing Plaintiffs leave to file an amended complaint. (Doc. 66.) On January 14, 2011, an order was issued memorializing the memorandum decision. (Doc. 68.)

On January 18, 2011, Plaintiffs filed a second amended complaint. (Doc. 69.) Plaintiffs stipulated to dismiss Defendants Tuolumne and Guffey. (Docs. 71, 73, 75-76.) Answers were filed by Tosta and Oakdale, and Ford filed a motion to dismiss. (Docs. 77-79.) On May 23, 2011, the Court issued a memorandum decision dismissing Plaintiffs' seventh cause of action for violation of California Civil Code section 52 et seq. and granting Plaintiffs leave to amend the complaint; an order memorializing that decision was issued on June 6, 2011. (Docs. 98, 100.)

A scheduling conference was held before District Judge Oliver W. Wanger on July 1, 2011, and a scheduling conference order was issued on July 5, 2011. (Docs. 104, 105.) The scheduling order set forth the following deadlines:

```
Rule 26 Initial Disclosures Deadline: 7/15/2011
Non-expert Discovery Deadline: 3/1/2012
Designation of Expert Witnesses due by 4/6/2012
Discovery due by 6/7/2012
Settlement Conference set for 6/14/2012
Non-Dispositive Motions filed by 6/26/2012
Dispositive Motions filed by 7/16/2012
Non-Dispositive Motions Hearing set for 8/1/2012
Dispositive Motions Hearing set for 8/20/2012
Pretrial Conference set for 9/24/2012
Trial set for 11/6/2012
```

(Doc. 105.)

Also on July 5, 2011, Plaintiffs filed their third amended complaint; answers were filed by Defendants Ford, Tosta, Oakdale, and Stanislaus. (Docs. 106, 108-10, 112.)

>On November 8, 2011, Plaintiffs filed a motion for a protective order forbidding inquiry into certain matters, and a motion to stay Plaintiffs' depositions. (Docs. 118, 119.) On November 21, 2011, Ford filed a discovery motion to have matters deemed admitted, and on November 22, 2011, Ford filed motions to compel Plaintiffs' answers to interrogatories and to compel production of documents. (Docs. 127, 130, 131.)
>
>Plaintiffs indicate that on November 22, 2011, they propounded special interrogatories and requests for production on Oakdale. The discovery requested, in part, that Oakdale identify every police officer who participated in the July 31, 2007, execution of the search warrant at Plaintiffs' home, describe in detail the officers' precise acts, and produce documents related to the search warrant execution. (See Doc. 179, 5:10-24.)
>
>On December 20, 2011, the parties appeared for a telephonic conference regarding Plaintiffs' motion for a protective order and Ford's discovery motions. (Doc. 147.) The Court ordered the parties to meet and confer regarding Ford's discovery disputes. (Doc. 148.) On December 21, 2011, a hearing was held regarding Plaintiffs' motion for a protective order. (Doc. 149.) In light of Plaintiffs' stipulation to waive Addison Demoura's claim for economic damages, the Court ordered the parties to meet and confer regarding the protective order and that Plaintiffs file either a voluntary dismissal or amended complaint dismissing Addison Demoura's economic claims. (Doc. 150.) Plaintiffs' fourth amended complaint was filed on December 22, 2011. (Doc. 151.)
>
>The parties were able to come to an agreement regarding their discovery disputes and stipulated to allow Plaintiffs to file a fifth amended complaint that incorporated Defendants' concerns regarding the fourth amended complaint. (Docs. 155, 169.) On January 23, 2012, the Court issued an order dismissing Plaintiffs' motion for a protective order without prejudice, allowing Plaintiffs to file a fifth amended complaint, and modifying the schedule to extend the non-expert discovery deadline to June 1, 2012. (Doc. 162.) No other amendments to the scheduling order were made. (Doc. 162, 2:11-12.) On January 27, 2012, Plaintiffs filed the fifth amended complaint, which is the current operative pleading. (Doc. 164.) All Defendants have filed answers. (Docs. 165-68.)
>
>Plaintiffs indicate that on February 21, 2012, Oakdale provided responses to Plaintiffs' discovery requests, including the identities of the police officers involved in the execution of the search warrant on Plaintiffs' residence. (Doc. 179, 6:3-5.)
>
>On April 9, 2012, the parties filed a stipulation and proposed order requesting to extend the expert discovery deadline, stipulating that all expert witnesses be disclosed by May 7, 2012, that any rebuttal or supplemental expert disclosures be made by May 18, 2012, and that all expert discovery be completed by June 15, 2012. (Doc. 169.) No other requests were made to modify the scheduling order. (See Doc. 169.) The Court approved the request on the same date. (Doc. 170.)

Doc. 184 at 2-6.

**B.      Magistrate Judge's Denial of Motion to File Sixth Amended Complaint**

On April 12, 2012, three days after the parties stipulated to a short extension of the expert discovery deadline, Plaintiffs filed a motion to file a sixth amended complaint. Doc. 171. Specifically, Plaintiffs sought to add seven additional defendants, all members of Oakdale's SWAT team who were

6

allegedly present at the time the search warrant was executed upon Plaintiffs' residence. Doc. 171 at 3, 8. Plaintiffs learned the identity of the SWAT officers from Oakdale on February 27, 2012. *Id.* at 3. Plaintiffs contended these new defendants were already named as Does 21-30 under the second, fifth, and sixth causes of action in previously-filed complaints. *Id*. at 3, 8.

Applying Federal Rule of Civil Procedure 16(b), the Magistrate Judge concluded that Plaintiffs exhibited a lack of diligence and failed to establish good cause to support modification of the scheduling order. The Magistrate Judge reasoned that by the time the motion to amend was heard and decided, the discovery deadline was set to close within two weeks, and the motions-filing deadlines were fast approaching:

> To allow Plaintiffs to amend the complaint to add seven new defendants, the Court would be required to extensively modify the scheduling order to allow the newly-named SWAT officer defendants time to develop their defenses and file any motions. As noted above, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Whether good cause exists to modify a scheduling order rests on whether the party seeking the modification has been diligent. See Johnson, 975 F.2d at 609. Here, Plaintiffs have not been diligent in seeking amendment.
>
> The event upon which this lawsuit is based, namely the allegedly unlawful search of Plaintiffs' residence, occurred on July 31, 2007. <u>Plaintiffs knew or should have known at that time that SWAT officers were involved in the search regardless of whether Plaintiffs could have identified them by name.</u> Plaintiffs' initial complaint was filed on July 31, 2009, and Plaintiffs did not serve the complaint until after the Court set a hearing for dismissal due to Plaintiffs' lack of prosecution. (Docs. 1, 16, 22.) Plaintiffs subsequently served the complaint, and the case was not dismissed. (See Docs. 22, 26.)
>
> After service of the complaint, there were several motions to dismiss and amended pleadings filed; eventually the third amended complaint was filed on July 5, 2011, and the Court issued a scheduling conference order on the same date. (Docs. 105, 106.)
>
> <u>Although the scheduling order was issued on July 5, 2011, Plaintiffs waited until November 22, 2011, to propound discovery requests on Oakdale seeking the identities of the officers involved in the execution of the search warrant. (Doc. 179, 5:10-24.) This request was made more than four years after the underlying event occurred, more than two years after the initial complaint was filed, and more than four months after the scheduling order was in place. Plaintiffs delayed in serving their discovery requests despite the fact that Plaintiffs knew of the existence of the SWAT officers when the allegedly unlawful search occurred.</u>
>
> After requested extensions of time from Plaintiffs, Oakdale responded to the discovery requests on February 21, 2012. (Doc. 179, 6:1-5.) <u>During the time that Plaintiffs propounded discovery and Oakdale responded, Plaintiffs amended their complaint twice; these amendments were by Court order and included discussions among

7

> the parties regarding the extent of Addison Demoura's damages. (See Docs. 150, 157-59, 162-64.) Defendants Ford and Oakdale assert that Plaintiffs did not "indicate their intent to add the individual Oakdale SWAT team members as parties at any time during the negotiations with defendants for the Fifth Amended Complaint." (Doc. 173, 3:12-15; see also Doc. 175, 3:25-4:1.)
>
> Further, Plaintiffs indicate that they received Oakdale's discovery responses on February 21, 2012. (Doc. 179, 6:3-5.) After that date, on April 9, 2012, the parties filed a stipulation and proposed order to extend the expert discovery deadline to June 15, 2012; no other extensions were sought. (Doc. 169.) Defendant Ford asserts that "[t]he non-expert discovery deadline of June 1, 2012 was never discussed. At no time during [the parties'] discussions [to extend the expert discovery deadline] did plaintiffs indicate that they were going to amend their Complaint yet again to add new defendants." (Doc. 173, 3:25-27; see also Oakdale's opposition, Doc. 175, 3:28-4:1 ("Plaintiffs never provided the officers or the existing Defendants any indication of their intent to add the officers as defendants in this action.").)
>
> Plaintiffs did not file the instant application to amend until April 12, 2012, approximately one and a half months after receiving Oakdale's discovery responses identifying the SWAT officers and mere days after the Court had approved the parties' stipulated request to extend the expert discovery deadline. (Docs. 170, 171.)

Doc. 184 at 11-13 (emphasis added). The Magistrate Judge recognized that if the latest amendment were permitted, it would be necessary to extend the discovery deadlines, reschedule the motion filing deadlines, the pretrial conference, and the trial date. In light of the Plaintiff's unexplained delays, the Magistrate Judge concluded there was no good cause to modify the scheduling order. *Id*. at 13.

The Magistrate Judge's finding that good cause did not exist was sufficient on its own to deny the motion to amend. Nonetheless, the Magistrate Judge evaluated, in the alternative, whether the proposed amendment could be granted under Rule 15(a), which requires consideration of whether there is evidence of: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, and (4) futility of amendment. *Foman*, 371 U.S. at 182. The Magistrate Judge correctly placed emphasis on the prejudice factor:

> As consideration of prejudice to the opposing party carries the greatest weight, the Court considers this factor first. *Eminence Capital, LLC*, 316 F.3d at 1052. "A need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint." *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999)....
>
> Plaintiffs' proposed amendment to add seven SWAT officer defendants is highly prejudicial. Based on the current schedule in this action, the SWAT officers have essentially no time to conduct discovery, file any pretrial motions, or otherwise adequately defend their case, as the deadlines for both non-expert and expert discovery

8

<u>are only weeks away</u>. (Docs. 105, 162, 170.) The non-expert discovery deadline is June 1, 2012, the expert discovery deadline is June 15, 2012, the non-dispositive motion filing deadline is June 26, 2012, and the dispositive motion filing deadline is July 16, 2012. (Docs. 105, 162, 170.) These tight deadlines do not allow the seven SWAT officers enough time to be served, conduct discovery, develop their defenses, and file motions.

Further, the pre-trial conference date is currently set for September 24, 2012, and the trial date is set for November 6, 2012; thus, the SWAT officers would not have adequate time to defend the case in this limited time frame. Moreover, amending all of these deadlines and delaying the trial prejudices the defendants currently named in the litigation.

As such, this factor weighs heavily against allowing the proposed amendment.

Doc. 184 at 14-15 (emphasis added).

Additionally, the Magistrate Judge incorporated her extensive review of Plaintiffs delay in seeking amendment, discussed above, concluding this factor weighed "strongly against allowing the proposed amendment." *Id*. at 14-15.[2] The Magistrate Judge concluded that leave to amend under Rule 15(a) would not be appropriate. *Id*. at 16.

C.  **Motion for Reconsideration.**

Plaintiffs central legal argument in support of reconsideration is that the Magistrate Judge's denial of their motion to amend "conflicts with the rule of law established by the Ninth Circuit in *Gillespie v. Civiletti*, 629, F.2d 637, 632-43 (9th Cir. 1989)." Doc. 188 at 11. Plaintiffs' contention is without merit.

In Gillespie, in addition to identifying several defendants by name, a pro se civil rights plaintiff identified several unnamed superintendents of federal, state, and local holding facilities in which plaintiff was incarcerated as well as several United States Marshals involved during his extradition as "John Doe" defendants. *Id*. at 639. On a motion filed by several of the named defendants, the district court dismissed the entire complaint for lack of subject matter jurisdiction without permitting any discovery. *Id*. at 639-40. The Ninth Circuit reversed on a number of grounds. As to the John Doe

---

[2] Defendants did not argue for a bad faith finding and the Magistrate Judge declined to enter one. *Id*. at 15. The Magistrate Judge also declined to address the issue of futility, finding the motion to amend could be denied on several alternative grounds. *Id*. at 16.

defendants, the Ninth Circuit reasoned:

> As a general rule, the use of "John Doe" to identify a defendant is not favored. *See, Wiltsie v. California Department of Corrections*, 406 F.2d 515, 518 (9th Cir.1968). However, situations arise, such as the present, where the identity of alleged defendants will not be known prior to the filing of a complaint. In such circumstances, the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds. [citations omitted]

*Id*. at 642. In *Gillespie*, after filing his complaint, the plaintiff filed interrogatories requesting the names and addresses of the unnamed superintendents and Marshals. *Id*. at 642-43. The district court dismissed the complaint without requiring replies to the interrogatories. *Id*. at 643. The Ninth Circuit found this to be an abuse of discretion because "[i]t was very likely that the answers to the interrogatories would have disclosed the identities of the 'John Doe' defendants," and that "[w]ith those disclosures, the allegations contained in appellant's complaint, if proven, could possibly have provided bases for relief...." *Id*. The matter was remanded with instructions to give plaintiff "an opportunity through discovery to uncover the identities of the 'John Doe' defendants and proceed with his claims." *Id*.

    *Gillespie* has absolutely no bearing on the present case. Plaintiffs were afforded ample opportunity to and did propound discovery upon Defendants in an effort to uncover the identity of the Doe Defendants. The problem here was the speed (or lack thereof) at which they did so and Plaintiffs' subsequent failure to diligently seek amendment once the SWAT team members' identities were uncovered. The Magistrate Judge's ruling did not run afoul of *Gillespie* in any way, let alone in a manner that could be described as "clearly erroneous or contrary to law."

    Plaintiffs' contention that the Magistrate Judge misapplied *Eckert v. Cold Storage v. Behl*, 943 F. Supp. 1230, 1233 (E.D. Cal. 1996), is equally misplaced. The Magistrate Judge relied on Eckert in generally describing the applicable Rule 16 legal standard. Doc. 184 at 10. Plaintiffs contend that the Magistrate Judge should not have relied upon this "inapposite" case "in concluding that Plaintiffs were not diligent for Rule 16 purposes." Doc. 188 at 12. *Eckert* is far from inapposite. In *Eckert*, plaintiffs moved for leave to add a new cause of action "nearly one year" after the expiration of the amendment

deadline and more than seven months after receiving the documents upon which the new claim was based. 943 F. Supp. at 1233. Plaintiffs contend that this case is distinguishable because they requested leave to amend approximately <u>nine</u> months (as opposed to a full year in *Eckert*) after the July 5, 2011 amendment cut-off date, and only one and a half months (as opposed to seven months in *Eckert*) after the information needed to support the amendment was received. Doc. 188 at 12. Although the delays are not identical, very few cases ever present identical facts to prior precedent. Critically, Plaintiffs provide no support for their contention that delaying their request for amendment until <u>nine</u> months following the amendment cut off date amounts to anything other than a failure to diligently pursue claims against the Doe Defendants.

Moreover, although, divorced from all other facts, a one and a half month delay between the receipt of the SWAT team members' names and the motion to amend is not inherently outrageous, the Magistrate Judge correctly considered other facts, including the fact that Plaintiffs waited until November 22, 2011, more than four and a half months after the issuance of the July 1, 2011 Scheduling Order, to even <u>propound</u> discovery upon Defendants regarding the identity of the SWAT team members. These delays compounded one another, leading to the Magistrate Judge's reasonable conclusion that Rule 16(b) did not permit amendment of the schedule. Plaintiffs have certainly not pointed to anything in the record suggesting the Magistrate Judge's determination on this ground was "clearly erroneous or contrary to law"

Plaintiffs complain about various other aspects of the Magistrate Judge's ruling in a section of their motion for reconsideration entitled "Statement of Facts and Declaration of Counsel." The Court has carefully reviewed these complaints and finds that none of them undermine the Magistrate Judges' reasoning, which is supported by the record, the law, and proper analysis.

//

//

## IV. CONCLUSION

Based on the foregoing, Plaintiffs' motion for reconsideration, filed on June 6, 2012, is DENIED.

SO ORDERED
Dated: July 3, 2012

                                        /s/ Lawrence J. O'Neill
                                        United States District Judge